# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITA VARSAM, individually and on behalf of other members of the general public similarly situated, and as aggrieved employees,<br><br>                 Plaintiff,<br><br>vs.<br><br>LABORATORY CORPORATION OF AMERICA, DBA LAB. CORP., a Delaware Corporation; and DOES 1 through 100, inclusive,<br>               Defendants. | Case No.:  14cv2719 BTM(JMA)<br><br>**ORDER DENYING MOTION TO REMAND** |

Plaintiff has filed a motion to remand this case to state court. For the reasons discussed below Plaintiff's motion to remand is **DENIED**.

## I. <u>BACKGROUND</u>

On June 3, 2014, Plaintiff commenced this action in the Superior Court of California, County of San Diego. Plaintiff is suing on behalf of herself and a purported class consisting of "all persons who worked as non-exempt Patient Service Technicians for Defendants in California, within four years prior to the filing of this complaint until date of certification." (Compl. ¶ 16.)

1

1    Plaintiff raises eight causes of action against Defendant Laboratory

2    Corporation of America ("LabCorp"): (1) violation of California Labor Code §§ 510

3    and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 1194,

4    1197, and 1197.1 (unpaid minimum wages); (3) violation of California Labor

5    Code §§ 226.7 and 512(a) (unpaid meal period premiums); (4) violation of

6    California Labor Code § 226.7 (unpaid rest period premiums); (5) violation of

7    California Labor Code §§ 201 and 202 (wages not timely paid upon termination);

8    (6) violation of California Labor Code § 226(a) (non-complaint wage statements);

9    (7) violation of California Labor Code §§ 2698, *et seq.* (Private Attorney

10   General's Act or "PAGA"); and (8) violation of California Business & Professions

11   Code §§ 17200, *et seq.* (unfair and harmful business practices). (Compl. ¶¶ 7–

12   18.) Plaintiff seeks damages, statutory penalties, civil penalties, injunctive relief,

13   and attorney's fees. (Compl. Prayer for Relief ¶ 1.)

14       On November 17, 2014, Defendant removed this action pursuant to 28

15   U.S.C. §§ 1332, 1441, 1446, as amended by the Class Action Fairness Act of

16   2005, Pub. L. No. 109-2, 118 Stat. 4 ("CAFA").  According to the Notice of

17   Removal, Defendant is a citizen of Delaware and North Carolina, and Plaintiff is a

18   citizen of California. (Notice of Removal, ¶¶ 15, 16.) The Notice of Removal also

19   states that the proposed class includes in excess of 100 members and that the

20   amount in controversy exceeds $5,000,000. (Notice of Removal, ¶¶ 10, 29.)

2

## II. <u>DISCUSSION</u>

Plaintiff moves to remand this action on the ground that Defendant has failed to satisfy its burden of establishing that the amount in controversy exceeds the sum of $5,000,000 and that there is minimal diversity of citizenship. The Court finds that Defendant has met its burden of establishing removal jurisdiction under CAFA.

**A. <u>Amount in Controversy</u>**

**1. Governing Law**

Under CAFA, the burden of establishing removal jurisdiction rests on the removing party. <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 685 (9th Cir. 2006). A removing defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and the defendant's amount in controversy allegation should be accepted if not contested by the plaintiff or questioned by the court. <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547, 554 (2014). If, however, "defendant's assertion of the amount in controversy is challenged … both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." <u>Dart</u>, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(c)(2)(B)); <u>Rodriguez v. AT&T Mobility Servs. LLC</u>, 728 F.3d 975, 978 (9th Cir. 2013). Under the preponderance of the evidence standard, a defendant must

3

1  establish "that the potential damage could exceed the jurisdictional amount." <u>Rea</u>

2  <u>v. Michaels Stores Inc.</u>, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting <u>Lewis v.</u>

3  <u>Verizon Commc'ns, Inc.</u>, 627 F.3d 395, 397 (9th Cir. 2010)).

4        This burden is not "daunting" and only requires that the defendant "provide

5  evidence establishing that it is '*more likely than not*' that the amount in

6  controversy exceeds [$5 million]." <u>Korn v. Polo Ralph Lauren Corp.</u>, 536

7  F.Supp.2d 1199, 1204 (E.D. Cal. Feb. 27, 2008) (emphasis in original). Still, "[a]

8  defendant cannot establish removal jurisdiction by mere speculation and

9  conjecture, with unreasonable assumptions." <u>Ibarra v. Manheim Investments,</u>

10  <u>Inc.</u>, 775 F.3d 1193, 1197 (9th Cir. 2015). Claims regarding the amount in

11  controversy under a preponderance of the evidence standard should be "tested

12  by consideration of real evidence and the reality of what is at stake in the

13  litigation, using reasonable assumptions underlying the defendant's theory of

14  damages exposure." <u>Id.</u> at 1198.

15        The plaintiff is not required to submit evidence refuting the defendant's

16  allegations and evidence of the amount in controversy in order to prevail on its

17  motion to remand. <u>Unutoa v. Interstate Hotels & Resorts, Inc.</u>, 2015 WL 89512,

18  at *2 (C.D. Cal. Mar. 3, 2015). However, as "master of [her] claim[s]," if the

19  plaintiff wants to avoid removal, she may plead facts narrowing the scope of her

20

4

1   claim. <u>Muniz v. Pilot Travel Centers LLC</u>, 2007 WL 1302504, at *4 (E.D. Cal.,

2   May 1, 2007).

3   **2. Analysis**

4   Defendant has submitted evidence to establish the amount in controversy,

5   including Plaintiff's deposition transcript, the Declaration of Daniel Lontay, and

6   the Declaration of Joseph Martin. Mr. Martin, the Senior Human Resources

7   Information Management Specialist of LabCorp, explains how he compiled

8   relevant time and pay data in connection with another class action lawsuit,

9   <u>Andres, et al. v. Lab Corp</u> ("<u>Andres</u>"), in the Central District of California. (Martin

10  Decl. ¶ 4.) The data included electronic timekeeping records for individuals

11  employed by Defendant LabCorp in California as Patient Service Technicians

12  ("PSTs") between June 2009 and April 2014. (Martin Decl. ¶ 6.) Mr. Lontay, an

13  expert for LabCorp, declares that he reviewed the data from <u>Andres</u> that

14  overlapped with the present action and set forth his calculations of the potential

15  amount in controversy based on that data. (Lontay Decl. ¶ 5.)

16  In response to these declarations, Plaintiff makes a foundational objection,

17  asserting it is not sufficiently clear that the data upon which Mr. Lontay based his

18  calculations was supplied by Mr. Martin or Defendant LabCorp. Plaintiff argued

19  that without such a connection, both declarations are irrelevant and inadmissible.

20

5

1   However, reading the declarations together, it is clear that the data reviewed by

2   Mr. Lontay was provided by Mr. Martin and Defendant LabCorp.

3        Plaintiff further objects that the declarations improperly reference the

4   Andres action. Although the claims in Andres may be different than those before

5   the Court, those differences do not affect the applicability of the data which

6   overlaps in time and scope with Plaintiff's class claims in this case.[1]

7        The timekeeping records analyzed by Mr. Lontay together with Plaintiff's

8   allegations, create a basis for reasonable assumptions of Defendant's damage

9   exposure on the violation of California Labor Code §§ 226.7 and 512(a) (unpaid

10   meal period premiums); violation of California Labor Code § 226.7 (unpaid rest

11   period premiums); and the violation of California Labor Code §§ 201 and 202

12   (wages not timely paid upon termination). The court addresses each of these

13   assumptions in turn.

14        **a. Meal Period Violations**

15        The Complaint alleges that members of the putative class were

16   "required to work for periods longer than five (5) hours without a meal period of

17   not less than thirty (30) minutes" in violation of California Labor Code § 512(a)

18   (Compl. ¶ 53.) When an employer fails to provide a required meal period, it is

19   _____

20        [1] Andres is an ongoing class action suit similar to the one before the Court here, involving alleged violations of the California Labor Code. The timekeeping data gathered in connection with Andres pertains to PSTs in California for the time period between June 2009 and April 2014.

1  liable for one additional hour of pay at the aggrieved employee's regular rate of

2  compensation. Cal. Lab. Code § 226.7.

3       According to LabCorp's records, between June 3, 2010 and April 24, 2014,

4  individuals employed as PSTs in California worked 632,311 shifts in excess of 6

5  hours (Lontay Decl. ¶ 14). Out of these 632,311 shifts, there were 145,723 shifts

6  where a recorded meal period took place after the fifth hour of a shift, were less

7  than thirty minutes long, or were not recorded at all. (Lontay Decl. ¶ 15.) This

8  data establishes a violation rate of roughly 25%. The average hourly wage of

9  putative class members employed on or after June 3, 2010, is $17.48. (Lontay

10  Decl. ¶ 11.) Thus, based on potential meal period violations there is at least

11  $2,547,238 in controversy. (145,723 shifts x $17.48 hourly wage = $2,547,238).

12      **b. Rest Period Violations**

13      The Complaint alleges that members of the putative class were required to

14  "work four (4) or more hours without authorizing or permitting a ten (10) minute

15  rest period per each four (4) hour period worked" in violation of California Labor

16  Code § 226.7. (Compl. ¶¶ 60, 61.)

17      Defendant supplies calculations for potential violations of rest periods

18  similar to those supplied for potential meal period violations. However, unlike

19  meal periods, which were recorded throughout the relevant time frame, rest

20  periods were no longer recorded in the timekeeping system after April 2012.

7

1   (Lontay Decl. ¶¶ 6, 13.) Defendant assumes rest period violations occurred for all

2   shifts that did not record a rest period after April 2012. Plaintiff argues that

3   Defendant's assumption of a 100% violation rate is improper. The court agrees

4   that Defendant's assumption of a 100% violation rate is not "grounded in real

5   evidence." See Ibarra, 775 F.3d at 1199. However, there is a basis for

6   reasonably assuming a 25% violation rate.

7        Plaintiff alleges that she "and class members *regularly* worked off-the-clock

8   that should have been compensated at an overtime rate," (Compl. ¶ 40.), and

9   that Defendants also "had a practice and/or policy of requiring Plaintiff and class

10   members" to clock out for rest periods, but did not pay for such periods.  (Compl.

11   ¶¶ 54, 61.) Based on these allegations, in addition to evidence regarding the

12   potential violation rate as to meal periods, a 25% violation rate would be a

13   conservative and reasonable assumption. See Oda v. Gucci America, Inc., 2015

14   WL 93335, at *4 (C.D. Cal. Jan. 7, 2015) (holding that a 50% violation rate

15   assumption was reasonable based on allegations that class members

16   "*sometimes* did not receive all of their meal periods in a lawful fashion" and that

17   there was a "policy or practice of not paying additional compensation to

18   employees for missed, uninterrupted [sic], and/or timely meal and/or rest

19   periods"); Unutoa, 2015 WL 89512, at *3 (assuming one missed rest period per

20   week where plaintiff alleged class members regularly work during rest breaks).

8

1    Defendant's data shows there were 412,796 shifts where no rest period

2    was recorded. (Lontay Decl. ¶ 13.) Assuming a 25% violation rate, 103,199 shifts

3    with potential violations put $1,803,918 in controversy. ((412,796 shifts x .25) x

4    $17.48 hourly wage).

5    **c. Waiting Time Violations**

6    California Labor Code § 203(a) provides that "if an employer willfully fails to

7    pay … any wages of an employee who is discharged or who quits, the wages of

8    the employee shall continue as a penalty" from the date such wages were due

9    until the date paid, to a maximum of 30 days. Cal. Lab. Code § 203(a). The

10   Complaint alleges that:

> Defendants wilfully [sic] failed to pay Plaintiff and class members who
> are no longer employed by Defendants the earned and unpaid wages
> set forth above, including but not limited to, overtime wages,
> minimum wages, and meal and rest period premium wages, either at
> the time of discharge, or within seventy-two (72) hours of their leaving
> Defendant's employ.

(Compl. ¶ 67.)

15   According to Defendant's records, there were 782 PSTs terminated

16   between June 3, 2010 and April 24, 2014, and their average daily wage was

17   $136.34. (Lontay Decl. at ¶¶ 16–17.) Defendant assumes the terminated PSTs

18   were owed the maximum penalty of 30 days wages, totaling $3,198,536.

9

1      It is not unreasonable to assume that when class members "*regularly*,"

2  worked off-the-clock that should have been compensated at an overtime rate, as

3  a matter of policy and/or practice worked during meal periods, and worked

4  through rest breaks, every class member terminated during that time would have

5  experienced a violation at some time and would not have been paid certain

6  wages. (Compl. ¶ 40.) Other courts have allowed 100% violation rate

7  assumptions in similar situations where plaintiffs alleged a "laundry list" of

8  potential violations. See, e.g.,Mejia, 2015 WL 2452755, at *5–6 (allowing 100%

9  violation rate assumptions for both wage statement and waiting time violations).

10  Assuming a much more conservative 25% violation rate to match the assumed

11  violation rates for meal and rest periods, the amount in controversy would still

12  total $799,634. ($3,198,536 x .25 = $799,634).

13      **d. Plaintiff's Request for Leave to Supply Evidence**

14      In a footnote, Plaintiff seeks leave to supply the Court with evidence that

15  the amount in controversy is actually less than $5,000,000. Plaintiff only vaguely

16  requests leave, failing to specify what evidence would be supplied. The initial

17  hearing was continued from February 6, 2015 to March 6, 2015 so that Plaintiff's

18  deposition could be taken for the purposes of this motion. The hearing was

19  continued twice more to April 17, 2015.  Plaintiff has had more than enough time

20

1  to gather evidence had she wished to present proof that the amount in

2  controversy was less than $5,000,000. Plaintiff's request is therefore denied.

3      **e. Amount in Controversy Exceeds $5,000,000**

4      The estimated sum of the potential damages for the claims discussed

5  above is $5,150,790. This amount does not include Defendant's potential

6  exposure with respect to the remaining claims or attorney's fees. Therefore, the

7  Court is satisfied that the amount in controversy exceeds $5,000,000.

8

9  **B. <u>Diversity of Citizenship</u>**

10      To satisfy minimum diversity for CAFA jurisdiction, at least one plaintiff

11  must be a citizen of a state of which a defendant is not a citizen. 28 U.S.C. §§

12  1332(d)(2)(A), 1453. "A person residing in a given state is not necessarily

13  domiciled there, and thus is not necessarily a citizen of that state." <u>Kanter v.</u>

14  <u>Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th Cir. 2001). Removing parties are

15  "merely required to allege (not to prove) diversity…." <u>Id.</u> (discussing the necessity

16  of affirmative allegations of diversity to meet the requirements for diversity of

17  citizenship).

18      Defendant has submitted evidence that it is a citizen of Delaware and North

19  Carolina. (Chakeres Decl. ¶ 2–3; RJN Ex. 1.) Defendant also affirmatively alleged

20  in its Notice of Removal that Plaintiff is a citizen of California. (Notice of Removal

11

¶ 16.)[2] At this stage, because Defendant is only required to allege, but not prove, diversity of citizenship, the Court finds that CAFA's minimal diversity requirement has been met.

### III. <u>CONCLUSION</u>

Because Defendant has met its burden of establishing that the amount in controversy is more than $5,000,000 and that there is minimal diversity of citizenship, this Court has jurisdiction under CAFA.

Plaintiff's motion to remand is **DENIED**.

**IT IS SO ORDERED.**

Dated:  July 13, 2015

Barry Ted Moskowitz, Chief Judge
United States District Court

---

[2] Plaintiff claims that Defendant's allegations are deficient on the ground that her Complaint only states she is a resident of San Diego, not a citizen. Defendant's Brief in Opposition to Plaintiff's Motion to Remand states that Plaintiff stipulated to being a citizen of California and no other state in her deposition. The portions of the deposition cited by Defendant are not included in Defendant's exhibits. However, Plaintiff does not deny that she admitted to being a citizen of California.

12